**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIMBERLY D. PAYNE, individually and on behalf of a collective of others similarly-situated,<br><br>          Plaintiffs,<br><br>v.<br><br>LEHIGH VALLEY RESTAURANT GROUP, INC.,<br><br>          Defendant. | Case No.: 5:19-cv-00028-JLS<br><br>The Honorable Jeffrey L. Schmehl |

**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE
COLLECTIVE ACTION SETTLEMENT AND ATTORNEYS' FEES
WITH MEMORANDUM IN SUPPORT**

Named Plaintiff, Kimberly D. Payne ("Named Plaintiff"), respectfully moves for approval of the opt-in settlement reached in this putative collective action pursuant to the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206, *et seq.*, which is part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The Court should grant this motion to approve the settlement because it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008). Defendant Lehigh Valley Restaurant Group, Inc. ("Defendant") does not oppose this motion.

**MEMORANDUM IN SUPPORT**

Named Plaintiff respectfully moves for approval of the opt-in settlement reached in this putative collective action. Named Plaintiff claimed that Defendant paid female Front of House

7390478.2

Managers less than their similarly situated male counterparts, in violation of the EPA. Defendant denied the allegations.

After exchange and analysis of payroll data relating to both male and female Front of House Managers, the exchange of additional written discovery, Named Plaintiff's deposition, and further arm's length negotiations, the Parties reached a settlement in an amount not to exceed $35,000 (the "Gross Settlement Amount") for the Collective, as follows:

- Participating Settlement Collective Members will be paid an amount representing $368.59 per year for the period of time between January 4, 2017 and January 4, 2019 in which they were employed as a Front of House Manager on a pro-rata basis, totaling $20,583.33 (the "Net Settlement Amount"); and

- Plaintiffs will recover their attorneys' fees equal to 33.33% of the $35,000 Gross Settlement Amount ($11,666.67) and costs of $2,750.00.

In addition, Named Plaintiff will execute a general release of all claims against Defendant, including her individual EPA retaliation claim, her Title VII claims and her Pennsylvania Human Relations Act claims brought in her First Amended Complaint, in exchange for additional consideration of $10,000 payable from Defendant.

The Court should grant this motion to approve the settlement because it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008). A copy of the Parties' stipulated Settlement Agreement and Release of Claims is attached hereto as Exhibit 1. This outcome is a model of efficient resolution, achieved early in the case by experienced counsel for both sides, with minimal burden on the Court. Defendant does not oppose the motion.

## Facts and Procedural History

Defendant is a Pennsylvania corporation with its principal place of business in Allentown, Pennsylvania. Defendant is a franchisee of Red Robin Gourmet Burgers, Inc. covering the Lehigh Valley, Northeast, Southeast and Harrisburg regions of Pennsylvania. Defendant owns and operates twenty-two (22) Red Robin franchise restaurants. Named Plaintiff was employed as a Front of House Manager for Defendant.

On January 4, 2019, Named Plaintiff filed a collective action Complaint against Defendant on behalf of herself and others similarly situated alleging that Defendant violated the EPA by paying female Front of House Managers less than their similarly situated male counterparts. (Doc. 1). The Complaint also included an individual count of retaliation under the EPA. Defendant filed an Answer denying the material allegations of Plaintiff's Complaint and asserting affirmative defenses on January 29, 2019. (Doc. 3). Named Plaintiff's Motion for Conditional Certification, and Defendant's Opposition thereto, are currently pending before the Court. Thereafter, Named Plaintiff received a Notice of Right to Sue from the EEOC dated September 6, 2019, and Named Plaintiff submits for filing a First Amended Complaint, adding individual claims of discrimination and wrongful termination under Title VII and the Pennsylvania Human Relations Act, a copy of which is attached hereto as Exhibit 2. The Parties request that the Court's Order approving settlement include a ruling deeming Named Plaintiff's First Amended Complaint filed as of the date the Court enters the Order.

Since the filing of Named Plaintiff's Complaint, the Parties embarked on an investigation and exchange of information. The Parties exchanged critical data, and counsel consulted with their respective clients with regard to the information that was received. The Parties evaluated

the payroll data for both male and female Front of House Managers, as well as affirmative defenses which Defendant raised to Plaintiff's claims. Additionally, both Parties consulted with statistical experts to evaluate the payroll data. Negotiations were robust as both sides zealously advocated their interests. As a result of discussions with each other, the Parties were able to reach a mutually acceptable settlement.

## Settlement Terms

The Parties have executed a Settlement Agreement (the "Agreement") that allows eligible members to participate in a settlement of the collective EPA wage discrimination claims asserted in this action. The Collective for purposes of settlement includes "current or former female employees who were employed as Front of House Managers for Lehigh Valley Restaurant Group, Inc. between January 1, 2017 and January 1, 2019."[1] There are 51 individuals, including the Named Plaintiff, covered by the settlement.

The Agreement provides for a "Global Settlement Amount" of $35,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Collective for unpaid wages alleged in the lawsuit. The Global Settlement Amount will be allocated as follows: (1) $20,583.33 (the "Net Settlement Amount") will be allocated to pay the claims of those who opt into the settlement (the "Participating Settlement Collective Members"); (2) $11,666.67 will be allocated to pay attorneys' fees; and (3) $2,750.00, or such other amount approved by the Court, shall be allocated to pay Plaintiffs' costs.[2]

---

[1] Based upon the discovery which has been exchanged and extensive discussions between the Parties, the Parties both agree that the application of a two-year statute of limitations to the EPA claims is an appropriate measure for settlement purposes.

[2] Named Plaintiff will execute a separate general release in conjunction with the settlement of her individual claims brought in the First Amended Complaint. The settlement terms described herein with respect to the Collective Members, including Named Plaintiff's EPA discrimination

Each Participating Settlement Collective Member shall be paid a pro-rated portion of the Net Settlement Amount based upon the number of days the Participating Settlement Collective Member was employed as a Front of House Manager during the Collective Period, less all applicable withholdings and previously authorized deductions. Exhibit "A" attached to the Agreement is a chart showing each Collective Member's share of the Net Settlement Amount.

Importantly, no Collective Member must participate, nor must any Collective Member submit anything to opt out of the Settlement in order to preserve any claim. Instead, only Collective Members who affirmatively participate by timely returning a Consent to Join form will release their alleged claim. Any unclaimed portion of the Net Settlement Fund will revert back to Defendant.

The Release provision is narrowly tailored to the wage claims asserted in the case, and applies only to those who choose to accept the Settlement benefit. It provides, *in toto*:

> 1.12   "Released Claims" means any and all wage and hour and wage payment claims of whatever nature, which a Collective Member may have against any of the Released Entities, as defined in paragraph 1.13 herein, whether known or unknown, as a result of any action or omission committed any time on or before the date of the Court's approval of the Settlement Agreement, whether under federal, state, and/or local law, statute, ordinance, regulation, common law (including conversion and/or unjust enrichment), or other source of law, including but not limited to the Equal Pay Act the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law, all as amended, including any and all claims for unpaid overtime compensation, minimum wages, other wages, expenses, liquidated damages, premium pay, interest, attorneys' fees, injunctive relief, or penalties related to overtime, minimum wages, expenses, and other alleged wage and hour violations whether under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law.

The proposed notice to the putative Collective (Exhibit B to Exhibit 1 attached hereto) fully and clearly informs them of the material terms of the Agreement, their rights to participate

---

claim as part of the Collective, are distinct from the terms of the settlement and general release of Named Plaintiff's individual claims.

or not, the possible limitations on their rights should they not participate, the precise scope of the release, and the procedure to implement whatever decision each individual makes regarding the Settlement.

## Argument

**I.     The Standard and the One-Step Procedure for FLSA Opt-In Settlement Approval**

This lawsuit was settled on an opt-in basis under the FLSA.  As a result, the Agreement has no binding effect on absent members of the Collective unless they affirmatively accept the benefits of the Agreement by opting in (unlike Rule 23 settlements, which is binding on absent members unless they affirmatively opt *out* of the class).  *Compare, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members in any subsequent action") *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of Rule 23 notice is to advise class members they will be *bound* by judgment unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . .  A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

"The primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted).  Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes

preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.* Court review of an FLSA settlement is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-1354. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*." *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-

1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012). This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II.     The Putative Opt-In Class Members are Similarly Situated

As a threshold matter, the Parties have agreed for settlement purposes only that the Court may conditionally certify the employees eligible to participate in the settlement as "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. Those eligible to opt into the settlement are "all females who were salaried Front of House Manager employed by Defendant between January 4, 2017 and January 4, 2019." Because the employees held the same position during the same time period, the Parties stipulate that the Court may conditionally certify these employees as "similarly situated" for the limited purposes of effectuating this Settlement.

## III.    The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case early in the proceedings. In her Complaint, Named Plaintiff presented detailed allegations regarding Defendant's policies and practices of paying female Front of House Managers less than their similarly situated male counterparts. In its Answer, Defendant denied Plaintiff's material factual allegations and asserted numerous affirmative defenses that it argued would defeat Named Plaintiff's and any putative collective/class claims in whole or in part. Through cooperative, informal exchange of data and other relevant job-related information, the Parties extensively investigated Named Plaintiff's claims and those of the Collective Members. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the Equal Pay Act. The

settlement of this lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length negotiation.

### IV. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two (2) issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Agreement. Both are easily satisfied.

#### A. A *Bona Fide* Dispute Existed Between the Parties

Named Plaintiff alleges Defendant violated the Equal Pay Act because it compensated female Front of House Managers less than their similarly situated male counterparts. Defendant strenuously denies Plaintiff's allegations, contends that its policies and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.

If Named Plaintiff's allegations are ultimately proved correct, Defendant would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Agreement, including additional damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Named Plaintiff to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution. If Defendant prevailed, then the Collective would obtain no recovery of any kind. The Parties' positions were staked out in the Parties' pleadings and throughout settlement discussions, and the Court should readily conclude a *bona fide* dispute between the parties existed.

#### B. The Proposed Settlement Is Fair and Reasonable

This Settlement was the product of arm's-length negotiations by experienced counsel and provides each putative collective member with compensation for the alleged pay disparity

between similarly situated female and male Front of House Managers for work performed during the applicable time period, free and clear of attorney's fees or expenses, as well as eliminating inherent risks both sides would bear if this complex litigation continued to resolution by a jury. Defendant contends that application of the various affirmative defenses under the EPA, as well as the statistical analysis of its forensic economic experts, will establish that its pay practices are not discriminatory and that Named Plaintiff and the Collective Members would not be entitled to recover any amount. As a compromise, and to provide Defendant with the certainty of a ceiling on liability, the Global Settlement Amount is capped at $35,000.00, even though Plaintiffs' counsel believes that ultimately the compensation due to the putative class members may exceed the Global Settlement Amount.

Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, the time and expense that would be required to analyze the expense reports at issue, and because the Settlement Fund represents a representation of the compensation which may ultimately be due to the collective. In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness). Several specific factors confirm the Settlement's fairness and reasonableness:

1. **Public Policy Favors Settlements**

Public policy favors settlements. This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of

FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of Named Plaintiff's and the Collective Members' claims and the viability of Defendant's defenses. If litigation continues, Named Plaintiff and the Collective would face many obstacles, including (i) the risk that the case would not be conditionally certified; (ii) challenges to proving damages; (iii) risk of decertification; and (iv) the inherent risks of a jury trial. The proposed Agreement brings immediate monetary value to each member of the Collective who elects to participate. Although the recovery at trial could have been greater than sums received under the Agreement, it is also possible the recovery would have been less, or nothing at all.

Defendant raised significant defenses. Defendant argued that there is no statistically significant differential between the salaries of female and male Front of House Managers, and that the payroll records would not support the Equal Pay Act claims. Defendant also argued that even if female Front of House Managers were paid less than their male counterparts in certain instances, those disparities were the result of lawful factors as opposed to gender discrimination. If Defendant prevailed on these defenses, Named Plaintiff and the Collective Members would likely be barred from any recovery.

Moreover, Named Plaintiff would have to obtain collective action certification to present collective claims to a jury. Although Defendant concedes the potential members of the

Collective are similarly situated for settlement purposes only, Defendant could have argued that various differences in job duties and responsibilities preclude collective action certification had litigation continued. Absent settlement, these issues remained uncertain.

In the face of these material disputes, it is significant that this Agreement brings the Collective meaningful monetary value now, not years from now, and provides certainty regarding the outcome. *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future."). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3. This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial. Named Plaintiff and the Collective Members would need to compile and adduce documentary evidence, representative testimony, and expert testimony sufficient to establish liability and damages for the entire Collective. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4. The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Agreement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between

the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA and Equal Pay Act actions, the Parties' counsel believe the Agreement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should conclude the proposed Agreement reflects a fair resolution of a *bona fide* dispute under the EPA and approve the Agreement.

## V.     Plaintiff's Counsel Should be Awarded Their Fees and Expenses.

The Third Circuit uses two methods in determining attorneys' fees in class or collective action lawsuits, the lodestar method and the percentage-of-recovery method. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820–21 (3d Cir. 1995). The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). Further, the percentage of recovery method is the prevailing methodology used by courts in the Third Circuit for wage and hour cases. *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014)

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Company*, 838 F.2d 10 451,455 (l0th Cir. 1988) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (l980)). Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454.

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed fee amount of $11,666.67, equaling 33 1/3% of the total Settlement is eminently reasonable[3]. See *Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (awarding 33 1/3% of the common fund in attorneys' fees); *Johnson v. Brennan*, 2011 WL 4357376 at *13 (S.D.N.Y. September 16, 2011) (awarding 33 1/3 % of recovery, stating "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation,* 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases."); and *Boone v. City of Philadelphia*, 668 F. Supp. 693, 714 (E.D. Pa. 2009) (citing a study of 289 class action settlements in the Third Circuit indicating that the average percentage awarded was 31 1/7% and the median was 33 1/3%).

Plaintiff's counsel should not be penalized for achieving the expeditious, but impressive, benefit for the Collective. A fee reduction based on an expeditious settlement would only incentivize unnecessary litigation and use of the Court's resources. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159 at *1-3 (N.D. Ia. Nov. 9, 2011) (*sua sponte* increasing attorney fee from 33.33 % to 36.04 % in recognition of efficient early settlement).

---

[3]   Plaintiff's counsel also seeks reimbursement of $2,750.00, representing expenses.

Plaintiff's counsel fee has been agreed to by the Parties and will be paid without diminishing the fairness of the recovery to the Collective. Pursuant to the prescription of the Supreme Court in *Hensley*, 461 U.S. at 437, the Court should not disturb the Parties' settlement of the amount of Plaintiffs' counsel fees. Defendant does not oppose this request for attorneys' fees and costs.

## Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached an Agreement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court. The Agreement is fair, reasonable, and adequate, and provides members of the Collective a Settlement Fund which provides compensation for the period of time they were employed as Front of House Managers. For the reasons stated herein, Named Plaintiff respectfully requests that the Court approve the Agreement.

**WEISBERG CUMMINGS, P. C.**

Date: September 27, 2019    */s/ Larry A. Weisberg*
Larry A. Weisberg, Esquire
Derrek W. Cummings, Esquire

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
Phone: (717) 238-5707
Fax: (717) 233-8133

Attorneys for Named Plaintiff and the Collective
Plaintiff Collective

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.

> By: */s/ Larry A. Weisberg*
> Larry A. Weisberg